OPINION
{¶ 1} John Schnieders is appealing his conviction for applying pesticide and operating a pesticide application business without a license.
 {¶ 2} On March 24, 2002, Schnieders and Curtis Reynolds became partners in AAA Termite Baiting and Pest Control (hereinafter "AAA Termite"). Schnieders was to sell and perform pesticide treatments and termite renewals. Schnieders would provide Reynolds with records for any pest control work performed. Reynolds, who had a custom applicator license to apply pesticides, would supervise Schnieders.
 {¶ 3} On October 23, 2002, Schnieders, dba AAA Termite, applied pesticide to 5212 Pepper Drive in Huber Heights, Ohio. Neither Schnieders nor AAA Termite had a Custom Applicators License pursuant to R.C. 921.06 or a Pesticide Applicators Business License pursuant to R.C. 921.021.
 {¶ 4} Ohio's Department of Agriculture began an investigation of Schnieders' conduct. The investigation resulted in six complaints being filed against Schnieders for applying pesticide at three addresses without a license pursuant to R.C. 921.06 or921.021.
 {¶ 5} In December of 2003, a trial was held, and Schnieders was found guilty. The court issued a decision and entry only on the Pepper Drive complaint. Schnieders has filed this appeal from his conviction, raising the following assignment of error.
 {¶ 6} "It is error to find that a charge of violating o.r.c.921.02(a), or 921.06, has been proved beyond a reasonable doubt where the uncontested evidence is that the defendant was working under the direct supervision of a licensed custom applicator and that licensed applicator testifies that his manner of supervision specifically includes the type of supervision he exercised over defendant in each of the alleged instances."
 {¶ 7} Schnieders argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 8} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175.
 {¶ 9} In 2002, R.C. 921.021(A) provided, "[n]o person shall own or operate a pesticide application business without obtaining a license for each location owned or operated by the person in the state from the director of agriculture." Likewise, R.C.921.06(A) stated, "[n]o individual shall act as or hold oneself out to the public as being a custom applicator without having a custom applicator license issued by the director of agriculture."
 {¶ 10} However, the revised code allowed trained servicemen to use pesticide under the direct supervision of licensed commercial applicators. R.C. 921.25(B). Direct supervision occurred when "a trained serviceman [acted] under the instructions and control of a commercial * * * applicator who [was] responsible for the actions of that trained serviceman and who [was] available when needed, even though the commercial * * * applicator [was] not physically present at the time and place the pesticide [was] applied." R.C. 921.01(U)(1). However, a trained serviceman had to be an "employee of a commercial applicator * * * whom the commercial applicator * * * [had] instructed in the proper use of the equipment and all pesticides with which the employee [was] to work." R.C. 921.01(VV).
 {¶ 11} Although not licensed, Schnieders argues he could sell and apply pesticide treatments because he was a trained serviceman acting under the direct supervision of a licensed commercial applicator — Reynolds. We disagree. Schnieders was neither directly supervised by Reynolds nor was he a trained serviceman.
 {¶ 12} Although Reynolds had agreed to supervise Schnieders, he did not. Direct supervision requires the serviceman to act under the licensed applicator's instruction and control. When Schnieders applied pesticide, Reynolds did not know what Schnieders was applying or where. Schnieders sold and applied the pesticide treatment and afterwards sent Reynolds the records. Reynolds did not send Schnieders on any jobs on his behalf in 2002. Not only did Reynolds not have any foreknowledge of the Pepper Drive treatment, but three months afterward, he was still unaware of the treatment. Certainly, Reynolds failed to instruct and control Schnieders at the Pepper Drive property. Because of this failure, Reynolds was not directly supervising Schnieders.
 {¶ 13} Despite Reynolds' partial ownership of AAA Termite, Schnieders was not employed by Reynolds. Reynolds did not pay Schnieders wages nor did he send him on jobs. Schnieders determined his own jobs and applied pesticide without Reynolds' pre-approval. Reynolds did not receive any compensation for the treatment at Pepper Drive. Further, the contract creating AAA Termite defined their relationship as a partnership — not an employer/employee relationship. Schnieders even testified he was Reynolds' partner — not his employee. Since Schneiders was not Reynolds' employee, he could not be a trained serviceman.
 {¶ 14} Neither Schnieders nor AAA Termite had a Custom Applicators License or a Pesticide Applicators Business License. Although Reynolds had a Custom Applicators License, he was neither directly supervising nor employing Schnieders. Given the evidence presented, we cannot say Schnieders' conviction was against the manifest weight of the evidence. Schnieders' assignment of error is without merit and is overruled.
 {¶ 15} The judgment of the trial court is affirmed.
Fain, J. and Grady, J., concur.